UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| JULIE GREENBANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-cv-00239-SEB-MPB |
| | ) | |
| GREAT AMERICAN ASSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING DEFENDANT'S PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS

On December 20, 2018, Plaintiff Julie Greenbank sued Great American Assurance Company ("Great American") [Dkt. 1-3]. That same day, Ms. Greenbank filed her first Amended Complaint, alleging breach of contract (Count I); bad faith (Count II); theft (Count III); statutory conversion (Count IV); criminal mischief (Count V); statutory, common law, and constructive fraud (Count VI); and common law conversion (Count VII) [Dkt. 10]. Now before the Court is Great American's Motion for Partial Judgment on the pleadings for Counts III through VII [Dkt. 14]. Great American requests the opportunity to orally argue this motion [Dkt. 21 and Dkt. 25].

For the reasons detailed below, we DENY Great American's Motion for Partial Judgment on the Pleadings. We conclude that oral argument is not necessary in resolving the motion; therefore, Great American's request is DENIED.

**Factual Background**

In September 2017, Ms. Greenbank purchased an American Saddlebred gelding horse, Thomas, for $500,000 [Am. Compl. ¶ 5]. Per representations from Great American that it was a leading provider of equine insurance and that it was staffed with equine experts, Ms. Greenbank executed a mortality insurance policy (the "Policy") with Great American for Thomas, effective September 28, 2017. [*Id.* at ¶¶ 7-9, 11]. The Policy's mortality coverage was for Thomas's full purchase price of $500,000 [*Id.* at ¶ 17]. The initial one-year term would have Policy expired on September 29, 2018, but Ms. Greenbank also purchased a guaranteed renewal endorsement, which provided that the Policy would be renewed year-to-year. [*Id.* at ¶¶ 19-20].

Thomas began exhibiting signs of a medical problem in February 2018. Chuck Herbert, Thomas's trainer and veterinary technologist who had over 40 years of horse-training experience, sought an assessment from Dr. Raymond Stone, also an experienced licensed veterinarian with an equine practice [*Id.* at ¶¶ 21-34]. Within a "reasonable period of time" and within the Policy period and its terms, Ms. Greenbank advised Great American of Thomas's deteriorating health status, but as a result of Dr. Stone's and Mr. Herbert's medical treatment and care, Thomas's condition initially showed improvement [*Id.* at ¶¶ 25, 27].

Thomas's health declined again in May and June 2018, including a significant weight loss and muscle atrophy [*Id.* at ¶ 28]. On June 7, 2018, Mr. Herbert advised Ms. Greenbank that he believed Thomas's deteriorating condition necessitated humane euthanization [*Id.* at ¶ 29]. The following day, Dr. Stone contacted Great American to

inform the company of Thomas's worsening status and his belief that Thomas should be humanely euthanized [*Id.* at ¶¶ 29-31]. Great American advised Ms. Greenbank that it would seek a second opinion as to Thomas's health condition and would therefore take possession of Thomas pursuant to a Policy provision that permitted it to assume control over Thomas's medical treatment at its expense,[1] and allowing Thomas to be immediately removed from his barn [*Id.* at ¶ 32].

Great American contacted Mr. Herbert, informing him that it was taking possession and control of Thomas and demanding that Thomas be relocated to Hagyard Equine Medical Institute ("Hagyard") in Lexington, Kentucky [*Id.* at ¶ 33]. Even though Mr. Herbert and Dr. Stone, who were most knowledgeable of Thomas's health, recommended humane destruction, Great American "began a course of radical, controversial and enduring medical treatment which subjected Thomas to excessive suffering so as to avoid payment of a covered loss under the Policy" [*Id.* at ¶ 42]. Once transported to Hagyard, Thomas's health continued to decline. He contracted Staph Aureu, which is indicative of hospital-acquired Methicillin-Resistant Staph Aureus,[2] and received numerous lavages[3] for a chest abscess [*Id.* at ¶ 43].

---

[1] This provision of the Policy provides: "It is a condition precedent of any liability by us under this policy that, in the event of any accident, injury, illness, lameness condition or lameness injury, disease, or physical disability of any kind of or to [Thomas], you . . . allow us to examine, and if we so require, to assume control over the treatment of [Thomas], and allow [Thomas] to be removed for such treatment." [Am. Compl., Exh. A].

[2] Methicillin-Resistant Staph Aureus is a type of staph infection that is difficult to treat because of its resistance to antibiotics. *Methicillin-resistance* Staphylococcus aureus (MRSA), CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/mrsa/index.html

[3] Lavage is defined as "the therapeutic washing out of an organ or part." *Dictionary*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/lavage.

On June 11, 2018, Great American authorized a Hagyard veterinarian to perform a tenectomy, a controversial and show-career ending procedure, on Thomas's right rear leg without Ms. Greenbank's consent or authorization [*Id.* at ¶¶ 46-47]. Dr. Stone called Dr. Nathan Slovis, Great American's chosen veterinarian at Hagyard, to request alternative treatment options to the tenectomy, but Dr. Slovis never returned Dr. Stone's call [*Id.* at ¶¶ 49-50]. Mr. Herbert voiced a similar request, but Great American responded that it would not consider other options and that Ms. Greenbank was obligated to accept such treatment under the Policy [*Id.* at ¶¶ 51-52]. Hagyard performed the procedure and, consequently, ended Thomas's career as a show horse and reduced the value of his investment to $0 [*Id.* at ¶ 55]. Ms. Greenbank asserts that these medical actions were contrary to what she had consented to and what was required under the Policy [*Id.* at ¶ 54].

On September 20, 2018, Great American informed Ms. Greenbank that it would not renew the Policy per the guaranteed renewal endorsement, claiming that she had failed to provide immediate notice of Thomas's health problems [*Id.* at ¶ 58]. Great American provided a short-term renewal of sixty days, allowing Ms. Greenbank until November 27, 2018 to secure new insurance. [*Id.* at ¶ 61]. Although it terminated the Policy, Great American continued to assert exclusive oversight, control, possession, and decision-making related to Thomas' treatment at Hagyard without Ms. Greenbank's consent [*Id.* at ¶ 65].

As of the date of the Operative Complaint, Great American had spent as much as $100,000 on Thomas's medical treatment "for the sole purpose of avoiding payment of a

covered mortality loss under the Policy" [*Id.* at ¶ 56]. This treatment has consistently occurred without Ms. Greenbank's consent [*Id.* at ¶ 57]. Instead, Ms. Greenbank asserts, Great American has approved a course of inhumane and unreasonable treatment for Thomas to continue his life, without regard for Thomas's medical status or Ms. Greenbank's investment or authorization, to avoid paying out on the Policy [*Id.* at ¶ 68]. Ms. Greenbank further asserts that Great American took all of these actions in bad faith and contrary to the Policy, Ms. Greenbank's interests, and Indiana law [*Id.* at ¶¶ 79-81].

From the time of the Policy's termination date to the filing of Ms. Greenbank's Amended Complaint on December 20, 2018, Great American has maintained exclusive possession and control of Thomas without Ms. Greenbank's authorization [*Id.* at ¶ 79].

## Legal Analysis

### I.    Standard of Review

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the pleadings are closed, but early enough not to delay trial. We review motions for judgment on the pleadings under the same standard by which we review motions to dismiss for failure to state a claim under Rule 12(b)(6). *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). "Like Rule 12(b) motions, courts grant a Rule 12(c) motion only if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (quoting *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)). In determining the sufficiency of a claim under this standard, the court

considers all allegations in the nonmovant's pleading to be true and draws such reasonable inferences as required in the nonmovant's favor. *Jacobs v. City of Chi.*, 215 F.3d 758, 765 (7th Cir. 2000).

## II.     Discussion

Great American has advanced three reasons in support of its motion regarding Counts III-VII.[4] We address each in turn. We note at the outset that we will not give weight to Great American's briefed facts disputing those presented in the Operative Complaint. As Great American acknowledges, we must accept all of the Complaint's well-pleaded facts as true at this stage. Thus, we disregard for now the numerous contradictory facts Great American has recited. While these facts may eventually prove accurate and thus be appropriate for our consideration at the summary judgment phase, they are irrelevant here.

### A.  Whether contract law precludes Ms. Greenbank from seeking remedies against Great American pursuant to the Crime Victims Relief Act

The Indiana Crime Victims Relief Act ("CVRA"), Ind. Code § 34-24-3-1 (2019), affords victims of various crimes, including theft, statutory conversion, criminal mischief, and statutory fraud, a civil remedy.[5] Great American argues that Ms. Greenbank's CVRA

---

[4] As Ms. Greenbank notes in her Response, it was initially unclear as to what Counts Great American's motion is addressing [Dkt 20, at 2]. Great American provides clarification in its Reply that its motion is directed at Counts III-VII [Dkt. 22, at 1].

[5] Great American does not specify to which Counts this argument applies; however, we note that only Counts III (Theft), Count IV (Statutory Conversion), Count V (Criminal Mischief), and Count VI (Statutory Fraud) invoke the CVRA. The common law and constructive fraud portions of Count VI are independent from Ms. Greenbank's statutory fraud claim and do not invoke the CVRA. Count VII (Common Law Conversion) also does not invoke the CVRA. Ind. Code § 34-24-3-1 (2019). We consider Great American's argument in this section accordingly.

claims "sound solely in contract" and thus should be dismissed because the CVRA "did not intend to criminalize bona fide contractual disputes." *Id.* at *16 (*citing Long v. State*, 935 N.E.2d 194, 197 (Ind. Ct. App. 2010)) [*Id.* at 8-9]. Great American states that this statute is "not intended to reach . . . innocent breach[es] of contract" such as those alleged by Ms. Greenbank. *NationsCredit Commercial Corp v. Grauel Enterprises, Inc.*, 703 N.E.2d 1072 (Ind. App. 1998) [Dkt. 14-1, at 8]. Claimants also may not repackage purely contractual claims under the guise of civil liability for alleged criminal violation, as contractual remedies will provide adequate relief. *Volvo Trucks N. Am. V. Andy Mohr Truck Ctr.*, No. 1:12-CV-448-WTL-DKL, 2014 WL 4794185 (S.D. Ind. Sept. 25, 2014) [*Id.* at 9].

Ms. Greenbank responds that Indiana law expressly allows CVRA claims to be asserted alongside contract disputes when the CVRA claims, like hers, are predicated on independent torts. *State Group Indus. (USA) Ltd. v. Murphy & Assocs. Indus. Servs.*, Inc., 878 N.E.2d 475, 480 (Ind. Ct. App. 2007); *Hess v. Biomet, Inc.*, No. 3:16-CV-208, 2017 U.S. Dist. LEXIS 22655, at *23 (N.D. Ind. Feb. 16, 2017); *Longhi v. Mazzoni*, 914 N.E.2d 834, 846 (Ind. Ct. App. 2009) [Dkt. 20, at 3-4]. Ms. Greenbank also argues that Great American misrepresents the holdings of the cases upon which it relies: *NationsCredit* and *Volvo Trucks* [*Id.* at 4]. She states that *NationsCredit* recognizes that CVRA claims can be asserted despite underlying contract issues and that *Volvo Trucks* does not expressly prohibit CVRA claims when there is a related contract dispute [*Id.*]. Great American replies that its application of *NationsCredit* and *Volvo Trucks* supports

the proposition that Ms. Greenbank is precluded from asserting CVRA claims for her wholly contractual issues.

We begin our analysis with the cases at the center of the parties' disputed application of Indiana law: *NationsCredit* and *Volvo. NationsCredit* involved a contract dispute between a secured creditor, NationsCredit, and its debtor. 703 N.E.2d at 1075. While early versions of the parties' security agreement granted NationsCredit a security interest in a reserve account belonging to the debtor, subject to NationsCredit's control, a later amendment stated that the reserve account shall be "owned" by NationsCredit. *Id.* at 1076. Upon fulfillment of the debt and termination of the security agreement, the parties disputed whether NationsCredit "owned" the reserve account, or whether it was collateral to be tendered back to the debtor. *Id.* at 1077. When NationsCredit refused to relinquish control of the reserve account, asserting that it was the "owner," the debtor brought several claims similar those brought by Ms. Greenbank, including bad faith, conversion, and constructive fraud, and sought relief pursuant to the CVRA. *Id.* at 1077-78.

The Indiana Court of Appeals held that NationsCredit could not be liable under the CVRA because the dispute—who owned the reserve account—was purely a question of contract interpretation, noting that "[t]he Gravamen of the present action is contract construction." *Id.* at 1078. Accordingly, the court concluded that NationsCredit should not be subject to liability for alleged criminal acts when its asserted wrongdoing was fully reconcilable by contract law. *Id.* Notably, however, the court approved the outcome of *Midland-Guardian Co. v. United Consumers Club, Inc.*, which held a defendant liable for

criminal conversion despite an underlying contract dispute. *Id.* at 1078-79 (*citing Midland-Guardian*, 499 N.E.2d 792, 794-95 (Ind. Ct. App. 1986)).

In *Midland-Guardian Co.*, defendant purchased installment contracts from a franchisor. *Midland-Guardian*, 499 N.E.2d at 793-94. Defendant paid an agreed upon price for the contracts, minus a percentage held back in a reserve fund. It was undisputed that defendant did not own the fund, having only a right to charge uncollectible debts against it. *Id.* at 794-95. However, defendant refused to transfer the funds after the termination of its business relationship with plaintiff-franchisor. *Id.* at 795. The *NationsCredit* court distinguished its decision from *Midland-Guardian* based on the operative facts. 703 N.E.2d at 1079. Whereas the *NationsCredit* dispute turned on a contract ambiguity, the *Midland-Guardian* dispute did not: "Midland's contract was not facially ambiguous regarding the ownership of the funds." *Id.* Because the issue between the parties in *Midland-Guardian* did not rest on the resolution of contractual terms, the *NationsCredit* court agreed that the *Midland-Guardian* defendant was properly liable under the CVRA. *Id.*

Our *Volvo Trucks* holding is akin to that of *NationsCredit*. 2014 WL 4794185, at *16. Defendant brought a counter-claim alleging that an oral contract had been breached and that plaintiff had committed theft, subjecting him to liability under the CVRA. *Id.* at *12, 16. Defendant provided nothing to support that the alleged theft was anything more than a breach of contract. *Id.* at *16. We rejected the CVRA claim, concluding that it was a recapitulation of his breach of contract claim. *Id.* Noting that the CVRA does not apply

to breach of contract disputes, we granted summary judgment for plaintiff on defendant's CVRA claim. *Id.*

Upon careful review of each of these cases, we conclude that both parties are at least partially correct in their interpretations and applications of Indiana law: persons may not invoke the CVRA for purely contractual disputes, nor may they repackage breach of contract claims as criminal violations; however, Indiana law does not exclude claimants from seeking relief pursuant to the CVRA when their legal claims go beyond their contractual grievances. In other words, the simple existence of an underlying contract dispute does not preclude a CVRA claim when the CVRA claim is premised on allegations broader than one's failures to abide by a contract; in such circumstances, it would be illogical to restrict the party to contractual remedies. *See Hess v. Biomet, Inc.*, No. 3:16-CV-208, 2017 WL 661511, at *7 (N.D. Ind. Feb. 16, 2017), *reconsideration denied*, No. 3:16-CV-208 JD, 2019 WL 1282032 (N.D. Ind. Mar. 20, 2019) (concluding that plaintiffs' CVRA claim alleging that defendants had made false and misleading statement regarding commission payments was independent from claim that defendants had breached the parties' contract by failing to pay commissions); *Longhi v. Mazzoni*, 914 N.E. 2d 834 (Ind. Ct. App. 2009) (upholding judgment against defendants pursuant to the CVRA when plaintiffs adequately alleged fraudulent misrepresentation, in addition to breach of contract); *State Group Industrial (USA) Ltd. v. Murphy & Associates Industrial Services, Inc.*, 878 N.E.2d 475 (Ind. Ct. App. 2007) (affirming liability under the CVRA when trial court appropriately concluded that the facts supporting a finding of fraud were independent from the parties' breach of contract dispute).

The question here then becomes whether Ms. Greenbank sufficiently pled the existence of independent, non-contractual facts to support her CVRA claims. We believe that she did. Ms. Greenbank's Operative Complaint presents grievances beyond the provisions of the Policy. While she does take issue with Great American's actions pursuant to the Policy, she also alleges that Great American's actions outside of the contract amount to theft, fraud, conversion, and criminal mischief. For example, her statutory conversion, theft, and criminal mischief claims are each partially premised on Great American's possession and control of Thomas *after* the termination of the contract. Great American does not question the sufficiency of these allegations, but only argues that they cannot co-exist with her contractual claims. That is simply not true under controlling principles of Indiana law. The circumstances are akin to those of *Midland*: Ms. Greenbank's CVRA claims, as they relate to Great American's actions outside of the Policy, are unrelated to ambiguities in the contract or the parties' responsibilities pursuant to the contract. In contrast to the claims in *NationsCredit* or *Volvo*, these allegations do not present solely straightforward questions of contract law.

Despite invoking *NationsCredit* and *Volvo Trucks*, Great American chose not to discuss the facts of either case, nor the facts of *Midland*. Great American also has ignored other cases where CVRA claims were permitted alongside related contract claims as well as the portions of Ms. Greenbank's allegations not grounded in contract law. We can only assume that this was because it knows the facts of the case at bar do not support its request. Accordingly, we reject Great American's assertion that Ms. Greenbank's CVRA claims are precluded.

## B. Whether Ms. Greenbank adequately alleged "unauthorized control"

Great American next argues that Ms. Greenbank's legal claims for common law conversion, statutory conversion, and theft must fail because Great American was authorized to possess and control Thomas pursuant to the Policy [Dkt. 14-1, at 10]. Thus, it contends, Ms. Greenbank has not pled that Great American took "unauthorized control" of Thomas, a requisite element for each these causes of action.[6] *Id.*

Ms. Greenbank provided several arguments in response to this assertion. Most notably, she states that Great American once again has failed to acknowledge her allegations surrounding its actions after the termination of the Policy, when Great American lost any contractual authorization to possess or control Thomas [Dkt. 20, at 6]. Great American replies by reiterating that its possession and control was authorized pursuant to the Policy [Dkt. 24, at 5-6]. It also states, for the first time, that it "maintained a reasonable belief that it possessed a legal and moral duty under the Policy to keep Thomas at least until he no longer required intensive care treatment, as the Policy language does not state that treatment of the animal ends upon the end of the Policy term" [*Id.* at 7].

Great American's second argument fails for the same reasons its first failed: it never acknowledges Ms. Greenbank's non-contractual allegations. Great American

---

[6] Although Great American asserts this argument against all of Ms. Greenbank's CVRA claims as well as her common law conversion claim, "unauthorized control" is only an element of theft, statutory conversion, and common law conversion. Accordingly, we apply this argument only to Count III (Theft), Count IV (Statutory Conversion), and Count VII (Common Law Conversion). We disregard it for Count V (Criminal Mischief) and Count VI (Fraud).

places the full weight of its argument on the Policy provisions authorizing its possession and control of Thomas but does virtually nothing to address the portion of these legal claims based on its actions after the termination of the Policy and outside of its terms. Even if we were fully persuaded by Great American's argument that it acted appropriately pursuant to its unambiguous contractual authorization when it took possession and control of Thomas, and even if there were no disputed factual matters on this issue, we could not find for it. Each of these legal claims incorporates Ms. Greenbank's allegations that Great American continued to maintain possession and control of Thomas after the termination of the Policy and to the date of the Operative Complaint without her consent. Great American's only response, that it reasonably believed it had a "legal and moral duty to keep Thomas," is without legal or factual support.

Great American's assertion that the Policy did not specify when its right to treat Thomas ended, rendering its actions reasonable, also lacks legal and factual support. Moreover, it creates an ambiguity as to what was authorized under the Policy, which cannot be resolved at this time. *Estate of Eiteljorg ex rel. Eiteljorg v. Eiteljorg*, 813 F. Supp. 2d 1069, 1080 (S.D. Ind. 2011) ("If the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the language is a question of fact which a [court] cannot properly determine on a motion to dismiss").

### C. Whether Great American acted with the necessary *mens rea* for Ms. Greenbank's claims to succeed

Finally, Great American states that Ms. Greenbank's claims pursuant to the CVRA as well as her claims for common law and constructive fraud fail because it did not act with the requisite *mens rea* [Dkt. 14-1, at 13]. Great American, once again, does not challenge the sufficiency of Ms. Greenbank's pleadings, but instead argues that it acted in reasonable belief of its contractual rights and states that Ms. Greenbank has not shown the requisite intent, i.e., that Great American acted intentionally or knowingly.

We can dispose of Great America's arguments on this point quickly: Whether a party formed the adequate *mens rea* is a question of fact that cannot be decided at this stage of a litigation. *F.D.I.C. v. Kime*, 12 F. Supp. 3d 1113, 1121 (S.D. Ind. 2014); *Stokes v. State*, 922 N.E.2d 758, 764 (Ind. Ct. App. 2010). Ms. Greenbank alleges that Great American had the requisite criminal intent for civil liability to attach [Am. Compl. ¶¶ 64, 78, 79, 99, 104, 109, 115, 124]; she is not yet required to prove it. We will not consider the contradictory facts presented by Great American at this time, nor will we weigh the evidence. Because Great American's argument is entirely predicated on our doing so and relies heavily on cases where the court has conducted intensive fact inquiries at the summary judgment or trial phases, we reject this contention [Dkt. 14-1, at 14-15].

## CONCLUSION

For the reasons above, Defendant's Motion for Judgment on the Pleadings [Dkt.

14] is DENIED.

IT IS SO ORDERED.

Date: _____9/19/2019_____

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Robert L. Burkart
ZIEMER STAYMAN WEITZEL & SHOULDERS
rburkart@zsws.com

Christopher S. Burnside
FROST BROWN TODD LLC
cburnside@fbtlaw.com

Justin S. Fowles
FROST BROWN TODD LLC
jfowles@fbtlaw.com

Christopher Glade Johnson
FROST BROWN TODD LLC
cjohnson@fbtlaw.com

Patrick A. Shoulders
ZIEMER STAYMAN WEITZEL & SHOULDERS
pshoulders@zsws.com

Clifford R. Whitehead
ZIEMER STAYMAN WEITZEL & SHOULDERS LLP
cwhitehead@zsws.com