UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

JULIE GREENBANK,                        )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        No. 3:18-cv-00239-SEB-MPB
                                        )
GREAT AMERICAN ASSURANCE                )
COMPANY,                                )
                                        )
                    Defendant.          )

**ORDER ON PLAINTIFF'S MOTIONS TO COMPEL AND DEFENDANT'S MOTION
FOR ORAL ARGUMENT**

This matter is before the Court on Plaintiff's Julie Greenbank, *Motion to Compel* (Docket No. 48) and Supplemental *Motion to Compel* (Docket No. 53). These motions are fully briefed with a combined response (Docket No. 57) and a reply (Docket No. 62). Defendant, Great American Assurance Company ("Great American") has also requested Oral Argument as to Plaintiff's motions. (Docket No. 58). As explained below, the Court **GRANTS in part and DENIES in part** Julie Greenbank's *Motion* and *Supplemental Motion to Compel* (Docket No. 48; Docket No. 53). Great American's request for Oral Argument (Docket No. 58) is **DENIED as moot**.

## I.    OVERVIEW

This matter involves a dispute between Ms. Greenbank, a horse owner, and the insurance company that provided the horse's equine mortality policy, which included a major medical provision. On December 20, 2018, Julie Greenbank filed her Amended Complaint alleging that Great American, the insurer for Ms. Greenbank's horse, Thomas, breached its contract with Ms. Greenbank and was liable for bad faith, theft, conversion, criminal mischief, fraud, and

negligence. (*See generally* Docket No. 10). Ms. Greenbank's legal claims against Great American are grounded in allegations that Great American improperly took possession and control of Thomas, rather than authorizing euthanization, so that Great American could avoid having to pay out benefits for a mortality loss under the parties' insurance policy. (*Id.*). Ms. Greenbank argues that Great American has subjected Thomas to inhumane, controversial, and excessive medical procedures to keep him alive and avoid paying out the policy. (*Id.*).

Great American held an $500,000 equine mortality policy, which included major medical and guaranteed renewal endorsements, on Thomas. (Docket No. 10, ¶ 11). It asserts that it took possession of Thomas pursuant to a policy provision that permitted it to assume control over Thomas's medical treatment at its expense. (*See generally* Docket No. 11; Docket No. 15-1 at ECF pp. 3–4). Great American retained Hagyard Equine Medical Institute ("Hagyard") to provide Thomas's ongoing medical treatment, which is where he remains today. (Docket No. 48-1 at ECF p. 34). Great American subsequently terminated the insurance policy for a multitude of reasons. (*See generally* Docket No. 11; Docket No. 15-1 at ECF pp. 3–4). Great American claims that since it took possession and control of Thomas's care, Thomas has made a significant recovery. (*Id.*). Of relevance, in its Answer, Great American asserts Affirmative Defense No. 27, which provides that "[a]t all times, Defendant has acted appropriately and in good faith and in compliance with applicable provisions of law." (Docket No. 11 at ECF p. 13).

At the time of the instant dispute, Ms. Greenbank had served six sets of discovery, constituting over 100 individual requests for documents. (Docket No. 57-2). These included Ms. Greenbank's Requests for Production ("RFP") seeking, in part, documents relating to the possession, control, and treatment of Thomas, the policies, claims and investigation under the policies, including internal communications, from June 2018 to present. (Docket No. 48-4;

Docket No. 48-5; Docket No. 48-6). In response, Great American has served over 5,000 pages of documents, including pre and post-suit text communications of Great American personnel, Great American's pre-suit claim notes, post-suit photographs, and videos of Thomas. (Docket No. 57-3; Docket No. 57-4; Docket No. 57-5; Docket No. 57-6).

On May 7, 2019, Great American produced a 79-page Privilege Log withholding or redacting nearly 800 documents based on confidentiality, relevance, and attorney-client/work-product privileges. (Docket No. 48-7). Ms. Greenbank took issue with several documents in the original privilege log and demanded to review almost the entirety of the alleged attorney-client and work-product privileged documents enclosed therein. (Docket No. 57-9 at ECF p. 1). On June 27, 2019, Great American provided a Supplemental Privilege Log with additional explanations for the items that Ms. Greenbank wished to review. (Docket No. 57 at ECF p. 7).[1] The Supplemental Log specifies responsive documents withheld or redacted under privileges for (i) attorney-client, (ii) work product, (iii) relevance and, (iv) confidentiality. (Docket No. 57-8).

Ms. Greenbank argues that it was evident during Great American's senior claims adjuster (Bloxsom), senior underwriter (Barcus), and claims supervisor's (Moore) depositions that none had seen the Privilege Log prior to the deposition, had been asked to review any document for privilege, had knowledge as to why their documents have been withheld or redacted. (Docket No. 48-1 at ECF pp. 35–36; Docket No. 48-2 at ECF p. 21; Docket No. 48-3 at ECF p. 24). Ms. Greenbank takes issue with this testimony because the majority of documents on the

---

[1] In Great American's counsel's letter that accompanied the Supplemental Privilege Log, he explained that the longer original Privilege Log had repeated descriptions because the attachments to emails had been listed separately from the emails to which they were attached. (Docket No. 57-9 at ECF pp. 1–2). Counsel also explained that, with few exceptions, the attachments themselves had been produced and only the underlying communications and "obviously privileged documents" were withheld. (Docket No. 57 at ECF p. 8, *citing* Docket No. 57-9 at ECF p. 2).

Supplemental Log were sent or received by these individuals. Moreover, Ms. Greenbank argues, these deponents also refused to answer questions regarding factual matters occurring after the filing of the Complaint and regarding Great American's reliance on the advice of counsel for its good faith defense.

Thus, Ms. Greenbank seeks an order compelling Defendant to produce documents and answer deposition questions. Specifically, Ms. Greenbank seeks an Order that Defendant: (1) produce *all* documents identified in the Supplemental Privilege Log in their narrative form[2], without redaction; (2) produce *all* internal documents and communications, which originated after the filing of the Complaint and are responsive to Plaintiff's Requests for Production in their native form, without redaction, including the Claim Note File and the Underwriting File; (3) produce Charlotte Bloxsom, Meriwether Moore, and Marlena Barcus for a second deposition in Evansville, Indiana; and (4) be sanctioned in the amount of Ms. Greenbank's attorneys' fees and costs incurred relating to the Motion to Compel and the taking of the second depositions of Bloxsom, Moore, and Marcus. (Docket No. 49).

The parties were unable to resolve the dispute informally. The Court has held at least seven telephonic discovery conferences in this litigation (*see, e.g.*, Docket No. 34, Docket No. 40, Docket No. 43, Docket No. 46, Docket No. 70, Docket No. 72, and Docket No. 75), both on matters addressed in this briefing and a host of other issues. The issues in this motion remain contested for the Court's review.

---

[2] The Supplemental Privilege Log references 125 documents that total more than 400 pages. (Docket No. 57-8). It also references the original 79-page privilege log, but it is unclear if this reference means that Ms. Greenbank's prayer for relief encapsulates the 79-page privilege log as well.

# I.  ANALYSIS

### a.  Standard

If parties cannot informally resolve a discovery dispute, Federal Rule of Civil Procedure 37 provides a vehicle for the aggrieved party to request an order from the court compelling discovery. *See Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002); *see also* S.D. Ind. Local Rule 37-1. District courts have broad discretion in matters relating to discovery. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (citing *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646-47 (7th Cir. 2001)).

Federal Rule of Civil Procedure 26(b)(1) sets the standard for the scope of general discovery, providing that:

> *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

A party moving to compel production carries the initial burden of establishing, *with specificity*, that the requested documents are relevant. *West v. Miller*, 2006 WL 2349988, at *2 (N.D. Ill. Aug. 11, 2006) (citing *United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993)). If that burden is met, the burden then shifts to the non-movant to show the impropriety of the request. *Id.* at *7.

Great American does not contest the relevancy of the majority of the documents in the Supplemental Privilege Log, thus unless otherwise noted the Court will turn to consider whether

Great American has met its burden to show the impropriety of Ms. Greenbank's requests and, if so, if Ms. Greenbank can overcome that burden.[3]

### a. Supplemental Privilege Log #1—Claim Notes

Most of Ms. Greenbank's briefing is scattershot and references large ranges of Great American's Supplemental Privilege Log for each argument, but she has a few particular arguments that she makes as to only the Claim File (Docket No. 48-9 at ECF p. 1, Supplemental Privilege Log #1). The Court agrees with one of those arguments. (Docket No. 50 at ECF p. 18). When describing the Claim Note File in the Supplemental Log, Great American lumps multiple claim notes in one row, omits the identity of the "sender," *i.e.*, the person creating the note, and instead identifies the persons as "Various;" omits the identity of the "Receiver" and generally cites "Great American employees and outside counsel for Great American;" does not include dates of the redact notes; and fails to reasonably describe the subject matter as the "Description" section provides no specificity. (Docket No. 48-9 at ECF p. 1). For example, the Court cannot discern if all the redacted Claim notes were pre-suit or if some were post-suit. Moreover, it appears that there is a typo as the description indicates that the "Redacted claim notes were created in the ordinary course of business, but instead created with the primary motivating purpose to aid in litigation." (*Id.*).

A privilege log must be made on a document-by document basis and include:

    (1)  The name and job title or capacity of the author(s)/originator(s);

---

[3] Ms. Greenbank states that "Defendant has refused to produce any internal document responsive to the RFPs originating after the filing of the Complaint based, in part, on relevance. (Docket No. 50 at ECF p. 10). This broad assertion is clearly false. (Docket No. 57 at ECF p. 3) (citing records and indicating "In response [to Ms. Greenbank's written discovery] Great American has served 5,000 pages of documents, including pre-suit and post-suit text communications of Great American personnel, Great American's pre-suit claim notes, post-suit updates on Thomas' condition, and post-suit photographs and videos of Thomas.").

> (2) The names of all person(s) who received the document or a copy of it and their affiliation (if any) with the producing party;
> (3) A general description of the document by type (e.g., letter, memorandum, report);
> (4) The date of the document; and
> (5) A general description of the subject matter of the document.

*In re. Bridgestone/Firestone, Inc., ATX, ATX II, & Wilderness Tires Prods. Liab. Litig.*, 129 F. Supp. 2d 1207, 1218–19 (S.D. Ind. 2001).

Great American has produced a large portion of the Claim File, but has redacted twenty pages (GAAC 1688-1708) based on a single entry on its privilege log. Moreover, that single entry provides insufficient information for the Court to assess the privilege claims and the merit of Ms. Greenbank's arguments against those privilege claims. Thus, the Court **ORDERS Great American to provide an Amended Supplemental Privilege Log by December 11, 2019, that provides further detail as to its privilege assertions for GAAC 1688-1708.** If necessary, given the various senders and, assumedly, various dates, Great American's amended log must include multiple rows for the claim notes so that the necessary information described above can be included in a way that permits Ms. Greenbank and this Court to conduct a meaningful review. If—in light of the guidance provided in this entry and the additional information in the amended, supplemental log—Ms. Greenbank still believes that any privileges are improperly invoked, then the parties must meet and confer regarding Ms. Greenbank's specific objections. **If that meet and confer does not resolve the issue, then each party may select up to three claim notes for Great American to produce by December 18, 2019, for an** *in camera review*. **If the Court finds that any of these six documents is not privileged, Great American shall produce all documents from GAAC 1688-1708 unredacted.**

Given the insufficiency of the Claim Notes privilege log entry, it is difficult for the Court to address Ms. Greenbank's argument that the entire Claim File was created in the ordinary

course of business and thus, neither the attorney-client privilege nor the work-product doctrine apply. However, the parties should keep in mind some general principles upon their further review of this issue. "Determining what is 'prepared in anticipation of litigation' has both a temporal and causation element . . . [W]ork product is defined as those materials produced because of the anticipation of litigation." *B.F.G. of Illinois, Inc. v. Ameritech Corp.*, 2001 WL 1414468, *3 (N.D. Ill. 2001). It is not persuasive to argue, generically, that an entire claim file is maintained in the ordinary course of business as this overlooks that claim files are maintained over time and as it becomes evident that some prospect of litigation or some articulable claim is likely to lead to litigation entries within the claim file are no longer made in the ordinary course of business. Moreover, Great American has stated—and the evidence submitted with this briefing confirms—that it has already provided large portions of the Claim File to Ms. Greenbank. Thus, if Great American adequately asserts privileges as to the claim notes in the amended log, then Ms. Greenbank must describe, with specificity, why specific portions of the Claim File were maintained in the ordinary course of business.

### b. Waiver of Privileges

Because Ms. Greenbank's key argument is based on a waiver of all privileges in the Supplemental Privilege Log, the Court addresses it first. Ms. Greenbank argues that, even if work-product doctrine and attorney-client privileges apply, Great American has waived them because counsel prepared the supplemental log without consulting Great American as to whether the underlying factual basis for the documents supported a privilege designation. (Docket No. 50 at ECF pp. 14–15; Docket No. 62 at ECF p. 2–6). Ms. Greenbank argues that Great American cannot claim protection as it did not designate evidence that any of the redacted or withheld documents were created in anticipation of litigation or were communications involving counsel

for the purpose of obtaining legal advice and assistance. (*Id.*). Ms. Greenbank's argument relies on four cases: *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971 (7th Cir. 1996), *Summerville v. Moran*, No. 1:14-cv-02099-WTL-TAB, 2016 WL 233627 (S.D. Ind. Jan. 20, 2016), *Telamon Corp. v. Charter Oak Fire Ins. Co.*, No. 1:13-cv-00382-RLY-DML, 2014 WL 202097 (S.D. Ind. Jan. 17, 2014), and *Clifford v. Crop Prod. Servs., Inc.*, 627 F.3d 268, 273 n. 6 (7th Cir. 2010).

However, none of these cases support Ms. Greenbank's position. Rather, in *Logan*, 96 F.3d at 966–67, the court held that the documents written after Plaintiff's worker's compensation claim was denied and he had filed suit were appropriately withheld on the basis of the work-product doctrine. The court acknowledged the standard that courts look to is a factual context to determine if "the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation." *Id.* (citations omitted). This does not mean that the parties themselves must make the determination.

In *Summerville*, 2016 WL 233627, at *5–6, the Court held that seventeen of the documents were not privileged because "entries in the privilege log do not describe the documents as relating to legal advice, communications or conversations between attorney and client, or discussions of ongoing legal concerns." Moreover, the Court went on to hold that "imposing a waiver because [the propounding party's] objections and privilege log are inadequate is severe, absent bad faith, willfulness, or fault." *Id.* at *5.[4] Indeed, the Court refused to order production of the attorney-client privileged documents, but instead provided an alternative form of relief better tailored to the facts of that case. *Id.*

---

[4] On this note, even if the Court were persuaded that Great American's Privilege Log was inadequate, nowhere does Ms. Greenbank address why the Court should immediately result to such a severe sanction.

In *Telamon Corp. v. Charter Oak Fire Ins. Co.*, 2014 WL 202097, at *1, the Court considered whether non-party investigators hired by a company to investigate a potential criminal theft for the purposes of reporting to law enforcement had to turn over certain documents in their file during litigation with a third-party insurer. The Court held that the non-party investigator's documents were not work product because there was no fear of litigation or fear of a claim being made at the time the documents were created. *See id.* at *3. The Court also held that the attorney-client privilege did not apply because some of the communications were obviously not made to obtain legal advice and because it was obvious that the investigation occurred because Telamon had "a pressing business reason to uncover what it believed was a large-scale inventory fraud by one of its workers." *Id.* at *4. Again, nowhere did the court waive a privilege or state that these privileges could only be determined by the parties themselves.

Finally, Plaintiff relies on a footnote in *Clifford v. Crop Prod. Servs., Inc.*, for the proposition that "argument of counsel is not evidence," yet *Clifford* does not involve privilege assertions or privilege logs for that matter, but instead reminds counsel at oral argument that his arguments are not evidence that a fact exists. *Clifford*, 627 F.3d at 273 n. 6. None of these cases support Ms. Greenbank's position that counsel is unable to independently consider a document within its factual context to determine if a privilege applies. This authority does not require sworn testimony or other evidence to be submitted in support of a privilege log. *See Heartland Consumer Products LLC v. DineEquity, Inc.*, No. 1:17-cv-01035-SEB-TAB, 2018 WL 3574737, at *5 (S.D. Ind. July 25, 2018) (rejecting similar argument that a party is "required to support their privilege assertions with affidavits affirming the statements in the privilege log and that the contents of the withheld communications are privileged.").

### c. Attorney-Client Privilege

Federal courts presiding over a diversity action look to state law in determining the existence and scope of the attorney-client privilege. *Urban Outfitters, Inc. v. DPIC Co., Inc.*, 203 F.R.D. 376, 378 (N.D. Ill. 2001), *citing* Fed. R. Evid. 501. The attorney-client privilege is "one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). It protects against judicially compelled disclosure of confidential information. *Lahr v. State*, 731 N.E.2d 479, 482 (Ind. Ct. App. 2000), *citing Canfield v. Sandock*, 563 N.E.2d 526, 529 (Ind. 1990). Indiana's attorney-client privilege is found in Indiana Code § 34–46–3–1, which provides in pertinent part:

> Except as otherwise provided by statute, the following persons shall not be required to testify regarding the following communications: (1) Attorneys, as to confidential communications made to them in the course of their professional business, and as to advice given in such cases.

*In re Commitment of J.B.*, 766 N.E.2d 795, 797 (Ind. Ct. App. 2002), *citing* I.C. § 34–46–3–1. The burden of proof as to the applicability of the privilege is on the party who asserts it. *Owens v. Best Beers of Bloomington, Inc.*, 648 N.E.2d 699, 702 (Ind. Ct. App. 1995).

The privilege allows both the attorney and the client to give complete and confidential information in candor so that both may be fully advised regarding the attorney's services to the client. *Lahr*, 731 N.E.2d at 482. Yet, the privilege "is not an absolute, eternal shield; a client who does not safeguard the confidentiality of communications that would otherwise be protected waives the privilege and subjects the communications to compelled disclosure." *R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, 2001 WL 1571447, at *2 (N.D. Ill. 2001), *citing United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991).

Using the attorney-client privilege, Great American seeks to shield some of its internal communications (i.e., emails, claim notes, and text messages) amongst Great American employees as well as emails between Great American employees and its counsel in this matter. (*see generally* Docket No. 48-9). Ms. Greenbank argues the privilege does not apply to internal employee documents (Docket No. 50 at ECF p. 27), that communications between Great American and its counsel are not covered by the privilege because of its "good faith" defense (Docket No. 50 at ECF pp. 27–34), and the privilege does not shield relevant, factual information. (Docket No. 50 at ECF p. 30).

The Court finds that—with the exception of the Claim File, which the Court has inadequate information to discern, and Supplemental Privilege Log # 119 and 122, discussed herein—Great American has met its initial burden of adequately alleging the attorney-client privilege. Each entry includes the essential privilege log contents, outlined above, and falls within the confines of Indiana's attorney-client privilege definition.

First, Ms. Greenbank takes issue with Supplemental Privilege Log #4, 19-21, 26-27, 32-33, 42-43, 45-49, 68-73, 77, 79, 83, 90-91, 94-96, 98-108, 111-117, and 125[5] because she argues that attorney-client privilege does not extend to internal documents and communications between employees withheld based on the attorney-client privilege. (Docket No. 50 at ECF p. 27). She cites *Odongo v. City of Indianapolis*, 1:14-cv-00710-TWP-MJD, 2015 WL 420110 (S.D. Ind. Jan. 30, 2015) for the proposition. However, in *Odongo* the plaintiff sought field notebooks from police officers and the court held that the police officers were non-attorneys and the notebooks

---

[5] Great American's Supplemental Privilege Log (Docket No. 48-8; Docket No. 57-8) was not numbered, but Ms. Greenbank provided a numbered version to the Court (Docket No. 48-9), which the Court references to align the Court's discussion with the issues Ms. Greenbank has raised.

were used in the regular course of recordkeeping protocol, thus the notebooks were not privileged. *Odongo* is not factually analogous to this case nor does it stand for the general proposition that internal communications cannot be protected under the attorney-client privilege.

More analogous case law directly contradicts Ms. Greenbank's argument. *See Long v. Anderson Univ.*, 204 F.R.D. 129, 134 (S.D. Ind. 2001) (collecting cases). "Individuals in an organizational structure are permitted to 'consult with one another' about an attorney's legal advice 'so that all relevant information is known before making a legal decision' without waiving the privilege." *Carr v. Fed. Bureau of Prisons (BOP)*, No. 2:14-cv-00001-WTL-MJD, 2017 WL 2957972, at *3 (S.D. Ind. July 10, 2017) (citing *Roth v. Aon*, 254 F.R.D. 538, 541 (N.D. Ill. 2009)). A general review of these privilege log entries, given Ms. Greenbank has provided so specific objections to any one entry, shows that these internal communications were either forwarded communications from counsel or were conversations amongst Great American employees, i.e., within an organizational structure, discussing counsel's legal advice in order to make legal decisions. Thus, Ms. Greenbank's argument is not persuasive.

Next, Ms. Greenbank takes issue with Supplemental Privilege Log #2-3, 5-7, 10-18, 22-25, 28-41, 44, 50-67, 74-76, 78, 80-82, 84-89, 92-93, 109-110 because she argues that communications between Great American's employees and counsel relating to Thomas, the policies, and the investigation of the claims are not protected. (Docket No. 50 at ECF pp. 27–34). Specifically, Ms. Greenbank argues that Great American cannot rely on advice of counsel to support its "good faith" affirmative defense and then withhold relevant documents and that the attorney-client privilege does not shield relevant factual information. The issue with this argument there is no evidence that Great American relied on the advice of counsel to support its "good faith" affirmative defense. The basic issue as to whether a bad faith claim permits the

plaintiff to obtain access to otherwise protected documents was addressed in *Hartford Financial Servs. Grp., Inc. v. Lake Cty. Park and Recreation Bd.*, 717 N.E.2d 1232, 1235 (Ind. Ct. App. 1999). In *Hartford*, plaintiff-municipal entity, who operated a water park, filed suit against its insurance company, Hartford, claiming Hartford acted in bad faith in investigating an insurance claim for property damage to a pool. Hartford originally determined that the loss was covered but retreated from its position when plaintiff proposed a cost of $1.5 million for replacement of the pool. The trial court compelled discovery, ordering production of:

> all of [Hartford's] claims files relating to the claim which is not the subject of this cause of action, including but not limited to, the claims files of the home office, regional office, local claims office, private investigator's file, and independent insurance adjustor's files, including the file jacket, which were generated before the complaint was filed.

*Id.* at 1234. The documents included "correspondence between Hartford and its outside counsel as well as internal communications regarding the advice or opinions of counsel with respect to the loss." *Id.* On interlocutory appeal, the Indiana Court of Appeals reversed and observed:

> The role of Hartford's counsel was not one of mere negotiator; nor was the attorney retained to act in the capacity of an agent other than an attorney such as a type of "outside claims adjuster" or to give simple business advice. Simply put, Hartford retained counsel to investigate Lake County's claim, render legal advice and make a coverage determination under the policy. Here, Hartford is not seeking to defend [plaintiff] against a third party. Rather, the underlying claim here, which remains unresolved, is whether [plaintiff] is covered under its policy with Hartford for the damage it allegedly sustained. The communication between Hartford and its attorney was not on behalf of [plaintiff], but was rather on behalf of Hartford . . . To permit [plaintiff] access to the documents simply because it asserted a bad faith claim against Hartford would ignore the basic premise of protecting the attorney-client privilege.

*Id.* at 1236–38. Thus, the fact that Great American denies it acted in bad faith does not invoke the so-called "put-in-issue" exception. *See, e.g.*, *Chamberlain Group v. Interlogix, Inc.*, 2002

WL 467153, at *3 (N.D. Ill. Mar. 27, 2002), *quoting Harter v. Univ. of Indianapolis*, 5 F. Supp. 2d 657, 665 (S.D. Ind. 1998) (Hamilton, J.) ("when a client files a lawsuit in which his or her state of mind . . . may be relevant, the client does not implicitly waive the attorney-client privilege . . . unless the client relies specifically on advice of counsel to support a claim or defense.").

Citing *Harter*, Ms. Greenbank argues that Great American has "clearly" put its state of mind at issue thru its "good faith" affirmative defense and, thus, she is permitted to discover whether Great American seeks to rely on the advice of counsel to support its actions and defense. (Docket No. 50 at ECF pp. 30–31). This is not a fair reading of *Harter*. In *Harter*, the relevant question at issue is whether the plaintiff's attorney was considered a "necessary witness," thus potentially precluding the attorney from representing plaintiff under the Indiana Rules of Professional Conduct. *Harter*, 5 F. Supp. 2d at 665. At the heart of that analysis was whether the plaintiff waived the attorney-client privilege as to communications on the subject to which the attorney was an alleged "necessary witness." *Id.* at 663. The Court noted that a client may implicitly waive the attorney-client privilege by putting "in issue" an attorney's advice. *Id.* at 664. Most notable to the instant case, the Court noted that "[t]he issue in this case is whether [plaintiff] has done anything to put his communications with his attorney in issue." *Id.* The Court then observed:

> The better-reasoned cases hold, however, that when a client files a lawsuit in which his or her state of mind (such as good faith or intent) may be relevant, the client does not implicitly waive the attorney-client privilege as to all relevant communications unless the client relies specifically on advice of counsel to support a claim or defense.

*Id.* (collecting cases). The Court concluded that while the plaintiff's "state of mind *may* be relevant here, the *possibility* that privileged communications could provide the opponent with

relevant evidence is not a sufficient basis for finding a waiver of the privilege." *Id.* at 665. Thus*, Harter* directly contradicts Ms. Greenbank's argument. Great American has not specifically relied on advice of counsel to support its good faith defense. Ms. Greenbank cites other authority for this proposition, which is also unpersuasive, but that authority discussed the issue from a work-product doctrine point of view and, thus, will be discussed in the next section.

Next, Plaintiff argues that the "description" in the Supplemental Log is insufficient because it provides no specificity to assess the privileges asserted. (Docket No. 50 at ECF p. 28). To assert the attorney-client privilege, a privilege log should "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).

Ms. Greenbank cites *Ott v. City of Milwaukee*, 2010 WL 5095305, at *7 (E.D. Wis. Dec. 8, 2010), for the proposition that Great American's Supplemental Privilege Log is insufficient. (Docket No. 50 at ECF p. 28, citing *Ott* to note for the proposition that "defendants failed to provide details about the documents being withheld."). Once again, Ms. Greenbank misrepresents the case's applicability to this matter. In *Ott* the defendants withheld certain documents on the basis of privilege, but the defendants *never provided a privilege log* to plaintiff. *See id.* at *6. This case is more akin to *Heartland Consumer Prod. LLC v. DineEquity, Inc.*, No. 1:17-cv-01035-SEB-TAB, 2018 WL 3574737, at *3 (S.D. Ind. July 25, 2018) where this Court found that privilege log entries substantially similar to Great American's entries in this case were sufficient. *See id.* at *7. Take, for instance, the "Description" that Ms. Greenbank cites in her opening brief as evidence of an insufficient privilege log:

> Confidential communications between legal counsel and Great American employees made in the context of an attorney-client

> relationship and in connection with the provision of legal services
> regarding communications with Plaintiff and including attachments
> and discussion of communications with Plaintiff.

(Docket No. 48-9, Supplemental Privilege Log # 58-61, 84). Like *Heartland Consumer Products LLC*, "[t]he most reasonable reading of these descriptions is that they pertain to emails seeking and giving advice regarding the legal impacts of the listed topics." *Id.* at *7.

The final argument Ms. Greenbank sets forth in regard to attorney-client privilege is that it does not shield relevant, factual information. (Docket No. 50 at ECF p. 30). She argues that the possession, control, and treatment of Thomas after the filing of the Complaint, and Great American's actions and decisions related to the same, all relate to facts concerning the claims and defenses. (*Id.*). Contrary to her earlier-addressed arguments, Ms. Greenbank now asserts that she does not seek post-Complaint communications with counsel relating to litigation strategy or the preparation of litigation filings. (*Id.*). The issue with this argument, raised in two conclusory paragraphs, is that Ms. Greenbank fails to cite to any specific Supplemental Privilege Log entry or any other specific discovery response in which she finds Great American has failed to provide relevant, factual information due to its reliance on the attorney-client privilege. Great American has provided post-suit updated on Thomas's condition (Docket No. 57-6) and videos of Thomas. (Docket No. 57-7).

In sum, unless specifically noted otherwise in this entry Ms. Greenbank is not entitled to any documents that Great American has withheld on the basis of attorney-client privilege.

#### d. Work-Product Doctrine

The work-product doctrine, announced in *Hickman v. Taylor*, 329 U.S. 495 (1947), protects otherwise discoverable documents and was codified as Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure and provides:

> [A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.. . . If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

To come within the qualified protection from discovery created by Rule 26(b)(3), a party claiming protection must show that the materials sought are: (1) documents and tangible things; (2) prepared in anticipation of litigation or for trial; and (3) by or for a party or by or for a party's representative. *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 613–14 (N.D. Ill. 2000).

If the work-product privilege is established, it can be overcome if the party seeking the materials, here Ms. Greenbank, shows: (1) a substantial need for the materials, and (2) an inability to obtain the substantial equivalent of the information without undue hardship. *Id.* at 614. Even upon such a showing, however "the lawyer's mental processes are required to be protected from disclosure." *Id.* The mental impressions of a corporate representative are also protected from disclosure, even if there is a substantial need. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB), 2018 WL 1162552, at *11 (E.D.N.Y Feb. 26, 2018) (providing that typically heightened protection is provided to

attorney-work product but that employees can constitute "other representatives" referred to in Rule 26(b)(3) if the document contains mental impressions and opinions); *see also* Fed. R. Civ. P. 26(b)(3) (The Court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.").

Like the attorney-client privilege, the Court finds that—with the exception of the Claim File, which the Court cannot discern at this juncture, and Supplemental Privilege Log #s 119 and 122, discussed herein- Great American has met its initial burden of adequately alleging the work-product doctrine. Each entry includes the essential privilege log contents, outlined above, and provides a sufficient explanation of the doctrine's applicability to the documents.

First, Ms. Greenbank takes issue with Great American's work-product privilege assertion as to documents and factual information possessed by its employees before and after the filing of the Complaint, specifically citing Supplemental Privilege Log #4, 8-9, 19-21, 26-27, 32-33, 42-43, 45-49, 68-73, 77, 79, 83, 90-91, 94-108, 111-117, and 125. (Docket No. 26 at ECF p. 26). She argues that these "internal communications and documents relate to Defendant's receipt of factual information, actions, decisions and investigation occurring in the normal course of its insurance business." (Docket No. 50 at ECF p. 26). Ms. Greenbank provides no additional explanation or basis as to why the work-product doctrine does not apply to these specific privilege log items as Great American adequately asserts and further explains in the Supplemental Privilege Log. Without more, the Court cannot review this argument. *Woodruff v. Am. Fam. Mut. Ins. Co.*, 291 F.R.D. 239, 242 (S.D. Ind. Apr. 22, 2013) (finding an argument waived when counsel failed to specify on a document-by-document basis the basis for the argument).

Next, Ms. Greenbank argues that even if these documents are privileged, that privilege is overcome because she need only show the "possibility, not the certainty, that the claim documents contain evidence of bad faith." (Docket No. 50 at ECF p. 29, citing *Logan v. Comm. Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996)). She argues that the possibility that the Supplemental Privilege Log documents contain evidence of bad faith is evident from the fact that (i) Great American did not assess the factual requirements for the privileges with the employees who originated the documents, (ii) that Great American intentionally over-redacted information in the Claim Note File which is not-privileged and which is required for a privilege log, (iii) Great American's Vice-President sent an email noting that it was cheaper to pay treatment costs than the $500,000 mortality claim, and (iv) the documents relate to Defendant's actions and decision-making as to the possession, control, and treatment of Thomas are based on a "moral" and "ethical" duty neither contained in the policy nor recognized by insurance law. (Docket No. 50 at ECF p. 29–30).

The analysis of this argument is a continuation of the bad faith issue in the attorney-client privilege discussion above. Courts have compelled the production of privileged claim file documents in bad faith actions where the insured showed both a compelling need for the documents and that the information was not available elsewhere. *See, e.g., Transport Ins. Co., Inc. v. Post Express Co., Inc.*, No. 91 C 5750, 1996 WL 32877, at *2 (N.D. Ill. Jan. 25, 1996); *Holmgren v. State Farm Mutual Automobile Ins. Co.*, 976 F.2d 573 (9th Cir. 1992). Because often "nearly all potential evidence of bad faith lies in the [insurer's] communication during the period of the allegedly wrongful conduct," *Logan*, 96 F.3d at 977, and "the claims file is a 'unique, contemporaneously prepared history' of how the insurer actually handled the claim,"

courts have found under certain circumstances that the need for "this information is not only substantial but overwhelming." *Transport*, 1996 WL 32877 at *3 (quotation omitted).

However, "a naked claim of bad faith cannot, without more, authorize a fishing expedition into privileged communications." *Logan*, 96 F.3d at 977. A mere allegation of bad faith is insufficient to overcome privilege. *Id.* Instead, the insured must "demonstrate some likelihood or probability that the documents sought may contain evidence of bad faith." *Id.* The "required showing is not a high hurdle because the plaintiff, without seeing the documents, can only speculate as to their likely contents." *Id.* In this regard, the insured "need only show the possibility, not the certainty, that the claim documents contain evidence of bad faith." *Id.*

Ms. Greenbank contends that she has made the requisite showing. She points to the fact that the Great American employees did not assess the redactions due to privilege, that the Claim File Note was "intentionally over-redacted" (although she does not expound on this issue), that Great American's Vice-President sent an email noting that it was cheaper to pay treatment costs than the $500,000 mortality claim, and that the documents "relate to Defendant's actions and decisionmaking as to the possession, control, and treatment of Thomas[,]" which are "based on a 'moral' and 'ethical' duty neither contained in the policy nor recognized by insurance law." (Docket No. 50 at ECF pp. 29–30). The Court has already addressed and rejected Ms. Greenbank's first argument that Great American erred by not having its employees review the redactions for privilege, Ms. Greenbank does not expound on how the Claim File Note was "Intentionally over-redacted," nor how an email noting that it was cheaper to pay treatment costs than the $500,000 mortality claim creates a possibility that Great American relied on legal advice in making its claim decisions.

Plaintiff cites *Woodruff v. Am. Fam. Mut. Ins. Co.*, 291 F.R.D. 239 (S.D. Ind. 2013) to support its argument showing substantial need. (Docket No. 50 at ECF p. 29). The procedural posture in *Woodruff* is completely different than this case. *Woodruff* involved a suit by an insured (really, its estate) against its insurer for alleged wrongdoings, including breach of the insurer's duty of good faith, for the insurer's handling of an underlying personal injury lawsuit where the insured was sued and was represented by insurer-provided counsel. *Id.* at 240. The Court held that neither the attorney-client privilege nor the work-product doctrine applied because the insurer sought to prevent the disclosure of documents/communications created in the underlying lawsuit—where the insured was the very party for whom those documents/communications were originally created given the insured-retained counsel on behalf of the insurer. *Id.* at 247. The Court noted that several of the contested documents had previously been sent to the insured or were his own statements. *Woodruff* is inapplicable to this case.

Moreover, Great American did not withhold its entire claims file; it withheld only a portion of documents within the claim notes and communications during the claims handling period. Ms. Greenbank has access to the remainder of the claims file, as well as to Great American's communications with Ms. Greenbank regarding its reasons for denying the claim, and the deposition testimony of the Great American employees who handled the claim. These non-privileged sources provide the information that Ms. Greenbank needs. Ms. Greenbank has not demonstrated that the mental impressions of counsel and the legal advice provided are directly at issue in its bad faith claim or that she has a compelling need for such information. "To permit [Ms. Greenbank] access to the documents simply because [she] asserted a bad faith claim against [Great American] would ignore the basic premise of protecting the attorney-client privilege." *Bartlett v. State Farm Mut. Auto. Ins. Co*, 206 F.R.D. 623, 627 (S.D. Ind. 2002)

(quoting *Hartford Fin. Servs. Group., Inc.*, 717 N.E.2d at 1235). The Court will not compel

Great American to produce the aforementioned documents on this basis.

      **e.   Unilateral Redactions for Relevance**

      Ms. Greenbank argues that Great American improperly withheld and redacted emails and

text messages for "relevance," specifically raising Supplemental Privilege Log # 94, 97, 118-

125. (Docket No. 50 at ECF pp. 15–16; Docket No. 50 at ECF pp. 25–26; Docket No. 48-9).

      As noted by Ms. Greenbank, this Court has previously denied a party leave to unilaterally

redact on the basis of relevancy in *Bell v. Anthem*, 1:15-cv-02062-TWP-MPB, 2016 U.S. Dist.

LEXIS 194739 (S.D. Ind. Nov. 9, 2016). In that case, the producing party sought to redact

information in documents that pertained to other 401(k) plans not at issue in the breach of

fiduciary duty lawsuit, but this Court noted that unilateral redactions are suspicious and deprive

the reader of context. The relevance redactions in this case are distinguishable from those in the

*Bell* case in several ways. First, that case involved documents where the 401k plans at issue in

the lawsuit were discussed interchangeably with the 401k plans not at issue, making it difficult to

ensure only irrelevant information was unredacted. This also made it more likely that the

relevance redactions would also omit necessary context to the otherwise responsive documents.

Here, many of the redactions for relevance are in text message and e-mail communications

where it is easier (and more likely) that the relevant subjects are completely separated from the

irrelevant subjects, such as which employees were "on call" or upcoming holiday celebrations.

(Docket No. 57-8 at ECF p. 14). These isolated redactions are unnecessary for context. Second,

Great American has provided an adequate explanation as to exactly what was redacted for

relevance, which permits Ms. Greenbank to challenge any of those redactions if she does not

believe that they are irrelevant. Ms. Greenbank has not challenged any specific relevance objection. Under these circumstances the Court finds the relevancy redactions appropriate.[6]

### f. Communications Between Great American and Hagyard

Next, Ms. Greenbank asserts that Great American has wrongfully withheld communications between Hagyard veterinarians, Dr. MacGillivray and Dr. Slovis, and Great American employees. (Docket No. 50 at ECF pp. 23–25). She specifically raises Supplemental Privilege Log # 119, 122, 123, and 124. (Docket No. 48-9 at ECF pp. 11–12). Supplemental Log # 123 and 124 address communications between Bloxsom (Great American employee) and Dr. Slovis (Hagyard Veterinarian) that are redacted for "Confidential Information Irrelevant to Plaintiff's Suit" as they are "Irrelevant communications regarding unrelated horse." (Docket No. 48-9 at ECF pp. 11–12). Given Hagyard is a large equine veterinarian facility and Great American is an equine insurance group, it is logical that these two entities regularly converse on several horses' medical conditions at any given time. This information is irrelevant to Ms. Greenbank's claim and, for the same relevancy reasoning as above, these redactions were appropriate in this scenario.

Supplemental Privilege Log #119 and #122 require the same analysis. They are:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 119 | GAAC PRIV 00712-714, GAAC 5026-5050 | Bloxsom, Charlotte | MacGillivray, Katherine | | | 11/14/2018-2/5/2019 | Text Messages | Attorney-Client Privilege & Work Product | Irrelevant post-suit communications unrelated to Thomas. Confidential discussions made in anticipation of litigation with consulting expert regarding plans to discuss with legal counsel C. Burnside. |
| 122 | GAAC PRIV 00671-672 GAAC 04853-04854 | Bloxsom, Charlotte | MacGillivray, Katherine | | | 11/14/2018 - 11/20/2018 | Text Messages | Attorney-client privilege & Work Product; Irrelevant & Confidential Communications | Irrelevant communications regarding unrelated horses; Confidential discussions made in anticipation of litigation with consulting expert regarding plans to discuss with legal counsel C. Burnside. |

---

[6] This analysis also applies to Ms. Greenbank's argument as to the "Confidential Post-Suit Communications" (Supplemental Privilege Log #97, 118, 120, and 121) and "Confidential Information Irrelevant to Plaintiff's Suit (Supplemental Privilege Log #123 and 124). While these are not "privileges" recognized by law, Great American used them conjunction with the relevancy redactions and the description of the redactions gives Ms. Greenbank adequate noticed about what was removed from the document. It would be inefficient for the parties and the Court to spend additional time adjusting the privilege log on this non-substantial matter.

(Docket No. 48-9 at ECF p. 11). Great American asserts that text messages between Ms. Bloxsom and Dr. MacGillivray have been redacted, at least in part, due to confidential discussions made in anticipation of litigation with a consulting expert witness. However, Dr. MacGillivray has been the primary veterinarian at Hagyard treating Thomas. (Docket No. 48-1 at ECF p. 209). Thus, Ms. Greenbank argues she is a fact witness and Great American is simply claiming her as a "consulting expert" to withhold relevant information.

Great American responds that Ms. Greenbank has the text messages between Hagyard and Great American that she seeks. (Docket No. 57 at ECF p. 30). Great American claims that Ms. Greenbank moves to compel what she already has in her possession, but then also indicates that these documents "have been produced in a *largely* unredacted form by Hagyard in response to a subpoena sent directly to Hagyard, making Plaintiff's Motion moot." (*Id.*) (emphasis added). Great American does not respond to the issues Ms. Greenbank has raised with its identification of Dr. MacGillivray as a consultative expert, but also disclosing her as a fact witness and seeking to take her deposition. Failure to respond to an argument results in waiver of that argument. Moreover, the Court does not see how Dr. MacGillivray could serve both roles given that "a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D). Great American's response that Hagyard provided the same communications "largely unredacted" is not persuasive as it gives the Court no indication that the unredacted portions were the portions that Great American's supplemental privilege log indicated redactions for "[c]onfidential discussions made in anticipation of litigation with consulting expert regarding plans to discuss with legal counsel C. Burnside." (Docket No. 48-9 at ECF p. 11). Moreover,

Great American has not carried its burden of establishing a sound basis for invoking the asserted privileges for log entries #119 and 122. (Docket No. 57 at ECF p. 30). The evidence shows Dr. MacGillivray was one of Thomas's treating veterinarians that Great American has named as a fact witness and intends to depose. **The Court ORDERS Great American to provide the documents referenced in supplemental log # 119 (GAAC PRIV 00712-714, GAAC 5026-5050 and GAAC 00671-672 and GAAC 04853-04854) with any redactions for "confidential discussions made in anticipation of litigation with consulting expert regarding plans to discuss with legal counsel C. Burnside" removed by December 11, 2019. Great American need not remove redactions for relevance as assessed above.**

### g. Deposition Issues

Ms. Greenbank takes issue with Bloxsom, Moore, and Barcus's depositions and Great American's counsel's objections to Ms. Greenbank's counsel's questions. Ms. Greenbank argues that these unanswered questions "were directed to obtain factual information about the claims and defenses." (Docket No. 50 at ECF p. 33). Ms. Greenbank then provides the Court with several pages of deposition excerpts that she takes issue with, but only a three-sentence paragraph conclusory arguing that Great American's objections were conclusory, and it should be forced to produce these witnesses for a second deposition and bear the respective costs and attorney's fees. (Docket No. 50 at ECF pp. 33–34). Without more explanation, this does not satisfy Ms. Greenbank's initial burden on a motion to compel. Moreover, it is obvious that many of the objections were proper in light of the above discussion. (Docket No. 50 at ECF pp. 31–33, *e.g.*, Q: "[P]art of the decision-making for the non-renewal and the issuance of the 60-day renewal would have been based upon communication with counsel?"; "So the decision to send this Exhibit 25 was based in part upon the advice of counsel?" and "When Dianne gave you that

directive, did she say whether that was based on the advice of counsel?").[7] The answers to each of these questions may have revealed the content of the advice of counsel—which is impermissible because Great American has not waived its attorney-client privilege. Likewise, given the Court's analysis regarding Ms. Greenbank's relevance and privilege arguments there is no basis to take second depositions of Bloxsom, Moore, and Barcus.

### h. Ms. Greenbank's Attorneys' Fees and Expenses

Ms. Greenbank seeks fees and expenses pursuant to Fed. R. Civ. P. 37(a)(5) and 30(d). Fed. R. Civ. P. 37(a)(5)(C) provides that if a discovery motion is granted in part and denied in part, "the court may . . . after giving an opportunity to be heard, apportion the reasonable expenses for the motion." The Court declines to award expenses, including attorney's fees, related to this motion for several reasons: only small portions of Ms. Greenbank's wide-sweeping requests were viable; both sides are responsible for the pugnacious discovery behavior in this matter that has left the parties seemingly incapable of resolving any disputes without Court intervention; and Ms. Greenbank's counsel used inapplicable case law throughout the briefing, which made the Court's review of the same more arduous than necessary.

---

[7] On reply, Ms. Greenbank argues "[t]he only way to determine the scope of the 'good faith' affirmative defense is to question the decision-makers [as to whether they relied on advice of counsel to support their actions]." (Docket No. 62 at ECF p. 11). The Court is unpersuaded. *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, 2015 WL 5123652, at *6 (N.D. Ill. Sept. 1, 2015) ("[There is] a fine line between referencing counsel's advice (which does not waive the privilege) and describing that advice and asserting that they relied on it (which would waive the privilege).") (internal citation omitted). "[T]he attorney-client privilege is not waived merely because counsel's advice may have influenced a litigant's state of mind and is therefore relevant to that state of mind. Rather, the privilege is waived when the advice is affirmatively used to establish a claim or defense." *Id.* at *7. If questions to determine whether Great American relied on the advice of counsel to support its actions were answered it would necessarily give away what the advice of counsel was, given Ms. Greenbank knows the action took. This is impermissible without a showing that Great American intends to affirmatively rely on the advice of counsel in making its good faith defense. *See id.*

In relevant part, Fed. R. Civ. P. 30(d) provides that "[t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." The Court did not find Great American did any of these things, thus this provision is inapplicable.

## II. CONCLUSION

In sum, the Court **GRANTS in part and DENIES in part** Julie Greenbank's *Motion* and *Supplemental Motion to Compel* (Docket No. 48; Docket No. 53). Great American's request for Oral Argument (Docket No. 58) is **DENIED as moot**. Specifically, the Court **ORDERS**:

1.      **Great American is to provide an Amended Supplemental Privilege Log by December 11, 2019, that provides further detail as to its privilege assertions for GAAC 1688-1708.** If necessary, given the various senders and, assumedly, various dates, Great American's amended log must include multiple rows for the claim notes so that the necessary information described above can be included in a way that permits Ms. Greenbank and this Court to conduct a meaningful review. If—in light of the guidance provided in this entry and the additional information in the amended log—Ms. Greenbank still believes that any privileges are improperly invoked, then the parties must meet and confer regarding Ms. Greenbank's specific objections. **If that meet and confer does not resolve the issue, then each party may select up to three claim notes for Great American to produce by December 18, 2019, for an *in camera review*. If the Court finds that any of these six documents is not privileged, Great American shall produce all documents from GAAC 1688-1708 unredacted.**

2.      **Great American is to provide the documents referenced in Supplemental Privilege Log # 119 (GAAC PRIV 00712-714, GAAC 5026-5050 and GAAC 00671-672 and GAAC 04853-04854) with any redactions for "confidential discussions made in anticipation**

of litigation with consulting expert regarding plans to discuss with legal counsel C. Burnside" removed by December 11, 2019. Great American need not remove redactions for relevance.

      **SO ORDERED.**

      **Dated:** December 4, 2019

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Service made electronically to all ECF-registered counsel of record.